UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SEAN DALY, EDWARD IVEY, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br>　　v.<br><br>BILLY MCFARLAND, an individual; JEFFREY ATKINS p/k/a JA RULE, an individual; FYRE MEDIA, INC., a Delaware corporation; and DOES 1 through 50, inclusive;<br><br>　　　　　　　　Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**1. Negligent Misrepresentation**<br>**2. Breach of Contract**<br>**3. Breach of Implied Covenant of Good Faith and Fair Dealing**<br>**4. Unjust Enrichment**<br>**5. Violation of § 349 of the New York General Business Law**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiffs Sean Daly and Edward Ivey, individually and as the representatives of a class of similarly-situated persons, alleges as follows:

## INTRODUCTION

1. Defendants extensively promoted their "Fyre Festival" as an "once-in-a-lifetime musical experience" and "the cultural experience of the decade," to take place on a private island in the Bahamas once owned by Pablo Escobar. Unfortunately none of those representations were true and Plaintiffs and the thousands of other festival-goers who arrived on the island were instead trapped in a massive disaster area.

2. Due to Defendant's compete lack of experience in arranging a music festival of the magnitude touted by Defendants, the festival lacked adequate food, water, shelter, and medical care, creating a dangerous situation among attendees who found themselves stranded on a remote island without sufficient provisions. Plaintiffs and other festival-goers tried to escape the elements in the only shelter provided by Defendants: small clusters of "FEMA tents," exposed on a sand bar that were soaked and battered by wind and rain.

3. In addition, it comes as no surprise that none of the more than two dozen promised musical acts performed at the event, which was cancelled only after more than twelve hours after thousands of festival-goers arrived on the island.

4. Prior to the start of the Fyre Festival, Defendants had been aware that they were clearly under-equipped to handle a large-scale music festival. Defendants' employees have acknowledged that no infrastructure for food service or accommodations were in place just prior to the Festival's April 27, 2017 start date and that the few contractors who had been retained by Defendants were refusing to work because they had not been paid. Moreover, Defendants were aware, just days before the start of the Fyre Festival, that Comcast Ventures, the V.C. arm of

Comcast Corporation declined to invest in Defendant Fyre Media concluding that the "huge branding event for the company" that was the festival "wasn't organized in a fashion that was likely to succeed."

5. Notwithstanding the above, Defendants misrepresented to Plaintiffs and other concert-goers the festival's accommodations, and continued to promote the event and sell ticket packages.

6. Moreover, even as Defendants became aware that they were not prepared to go forward with the Fyre Festival as scheduled, they continued to solicit attendees to pay into the festival's proprietary chip payment system called "Fyre Band."

7. When Defendants became aware before the start of the festival that it would not actually happen, they notified the scheduled performers and certain festival employees not to fly out for the event. However, Defendants did not notify Plaintiffs or the thousands of festival-goers who showed up at the event that it was cancelled. Instead, Defendants were actively trying to sell upgraded VIP tickets to existing ticket holders.

8. After thousands of attendees arrived on the Island on the first day of the event and were stranded without sufficient food, water, or shelter, Defendants finally cancelled the event on the morning of the second day.

9. While Plaintiffs are aware that Defendants have offered refunds for the cost of the festival tickets (which have not yet been issued), Plaintiffs' damages also include transportation costs and incidental expenses incurred as a result of Defendants' unlawful conduct, in addition to reimbursement for money transferred to Defendant's "Fyre Band" payment system. Thus, Defendants' offer to refund only the price of festival tickets is grossly inadequate.

10. Plaintiffs bring this class action on behalf of all ticket buyers and festival attendees wronged by Defendants.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction over this action under the Class Action Fairness Act, 28, U.S.C. § 1332(d), because this is a class action in which: (1) there are more than a one hundred and fifty (150) members in the proposed class; (2) various members of the proposed class are citizens of states different from where Defendants are citizens; and (3) the amount in controversy, exclusive of interest and costs, exceeds $5,000,000.00 in the aggregate.

12. In addition, this Court has supplemental jurisdiction over Plaintiffs' state claims under 28, U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff and the putative classes claims occurred in the Southern District of New York as Defendants: (a) are authorized to conduct business in this District and have intentionally availed themselves of the laws within this District; (b) currently do substantial business in this District; and (c) are subject to personal jurisdiction in this District.

## PARTIES

14. At all times relevant to this action, Plaintiff Sean Daly was a resident of New York City, New York, and a citizen of the State of New York.

15. At all times relevant to this action, Plaintiff Edward Ivey was a resident of Brooklyn, New York, and a citizen of the State of New York.

16. Upon information and belief, Defendant Billy McFarland was a resident and citizen of the State of New York at all times relevant to this action.

17. Upon information and belief, Defendant Jeffrey Atkins p/k/a Ja Rule was a resident and citizen of the State of New York at all times relevant to this action.

18. At all times relevant to this action, Defendant Fyre Media, Inc. was a business entity incorporated under the laws of the State of Delaware.

19. Plaintiffs are informed and believe, and based thereon alleges, that at all times mentioned herein, each of the Defendants was the agent, servant, employee, co-venturer, and co-conspirator of each of the remaining Defendants, and was at all times herein mentioned acting within the course, scope, purpose, consent, knowledge, ratification, and authorization of and for such agency, employment, joint venture and conspiracy.

## GENERAL ALLEGATIONS

20. Starting around December 2016, Defendants began promoting the Fyre Festival. Defendants extensively advertised Fyre Festival as "the cultural experience of the decade," featuring music entertainers Blink-182, Major Lazer, Disclosure, Matoma, and Claptone. Defendants further emphasized the "first-class culinary experiences and a luxury atmosphere," and even promoted a $1,000,000.00 treasure hunt for festival attendees. Defendants further represented that the festival would take place on a "private island" in the Bahamas once owned by drug kingpin Pablo Escobar.

21. As part of Defendants' marketing efforts, Defendants' employed so-called online "influencers" - including Rose Bertram, Kendall Jenner, Bella Hadid, and Emily Ratajkowski— to use social media to generate ticket sales, and created extravagant websites and mock-ups of the luxurious villas in which attendees would be staying.

22. Ticket packages for the event, which were advertised as including luxury accommodations and first-class food, ranged in price from $1,200.00 to well over $100,000.00 per person.

23. In reliance on Defendants' representations noted above, Plaintiffs purchased ticket packages to the Fyre Festival as well as airfare from New York to Miami, totaling approximately $2,200.00 in costs for each Plaintiff.

24. Once at the festival location, Plaintiffs were directed to a "FEMA tent" rather than the luxurious villa described in Defendants' promotional materials and promised to Plaintiffs as part of their ticket package.

25. Similarly, the limited selection of food that was available was in short supply as was the festival and medical staff to address attendees' concerns.

26. Also notably absent from the Fyre music festival was the world-class musical entertainment which was promised.

27. Defendants had been aware prior to the start of their festival that they were under-equipped to put on a music festival as they promised to thousands of ticket holders. Defendants employees have since acknowledged that prior to the first day of the festival, there was insufficient infrastructure in place for food service or accommodations and that the few contractors who had been retained by Defendants were refusing to work because they had not been paid. Also, prior to the event, payments to certain of the featured performers were also delayed or not made.

28. In fact, prior to the start of the festival, Defendants began contacting scheduled performers and celebrities and advising them not to attend.

29. However, Defendants did not similarly warn attendees about the under equipped conditions awaiting them on the island. In fact, Defendants continued to solicit attendees, including Plaintiffs, to pay into the festival's proprietary chip payment system called "Fyre Band" despite the fact that Defendants were aware that the festival would be cancelled.

29. Defendants only cancelled the event on the morning of the second day of the festival after thousands of attendees, including Plaintiffs, had already arrived and were stranded, without sufficient food, water, shelter or security. Moreover, Defendants were aware, just days before the start of the Fyre Festival, that Comcast Ventures, the V.C. arm of Comcast Corporation declined to invest in Defendant Fyre Media concluding that the "huge branding event for the company" that was the festival "wasn't organized in a fashion that was likely to succeed."



**CLASS ACTION ALLEGATIONS**

30. Plaintiffs bring this action, on behalf of themselves and all others similarly situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs are informed and believe and on that basis, allege that Defendants sold thousands of Fyre Festival tickets, in New York, and throughout the United States. Plaintiffs are informed and believe and on that basis, allege that the advertising and representations for the Fyre Festival tickets were uniform throughout the class period.

31. The groups of similarly situated individuals Plaintiffs seek to represent are defined as follows:   All residents of the United States of America who purchased Fyre Festival tickets during the period from 2016 through April 30, 2017 (the "Class").

32. Plaintiffs also seek to represent a subclass defined as all members of the CLass who purchased Fyre Festival tickets in the State of New York (the "New York Subclass").

33. Excluded from the Class and Subclasses are Defendants, their parent, subsidiaries and affiliates, their directors and officers and members of their immediate families; also excluded are any federal, state or local governmental entities, any judicial officers presiding over this action and the members of their immediate family and judicial staff, and any juror assigned to this action.

34. Plaintiffs reserve the right to amend the Class and Subclass definitions if discovery and further investigation reveal that the Class and Subclasses should be expanded or otherwise modified.

35. Plaintiffs reserve the right to establish additional subclasses as appropriate.

36. This action is brought and properly may be maintained as a class action under the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1), (b)(2) or (b)(3), and

satisfies the requirements thereof.

(a) **Numerosity:** The Class is so numerous that the individual joinder of all members is impractical under the circumstances of this case. While the exact number of Class members is unknown to Plaintiffs at this time, Plaintiffs are informed and believe, and based thereon allege, that thousands of people purchased tickets for, and/or attended, Defendants' Fyre Festival.

(b) **Commonality**: Common questions of law and fact exist as to all members of the plaintiff class and predominate over any questions that affect only individual members of the Class. The common questions of law and fact include, but are not limited to:

> (i) Whether Defendants negligently misrepresented various facts regarding the Fyre Festival; and
>
> (ii) Whether Defendants breached any implied or explicit contractual obligations to ticket buyers and to attendees of Fyre Festival;
>
> (iii) Whether Defendants violated § 349 *et seq*. of the New York General Business Law
>
> (iv) Whether, as a result of Defendants' misconduct as alleged herein, Plaintiffs and the Class are entitled to damages, restitution and/or other remedies to which Class members are entitled as a result of Defendants' wrongful conduct, and, if so, the amount and nature of such relief.

(c) **Typicality:** Plaintiffs' claims are typical of the claims of the Class members. Plaintiffs and the members of the class sustained damages arising out of Defendants' wrongful and fraudulent conduct as alleged herein.

(d) **Adequacy:** Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have no interest that is adverse to the interests of the other Class Members.

(e) **Superiority:** A class action is superior to other available means for the fair and efficient adjudication of this controversy. Because individual joinder of all members of the class is impractical, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense that numerous individual actions would engender. The expenses and burdens of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while important public interests will be served by addressing the matter as a class action. The cost to and burden on the court system of adjudication of individualized litigation would be substantial, and substantially more than the costs and burdens of a class action. Class litigation would also prevent the potential for inconsistent or contradictory judgments.

## FIRST CAUSE OF ACTION
### (Negligent Misrepresentation)

37. Plaintiffs repeat the allegations alleged herein as though fully set forth herein.

38. Plaintiffs bring this cause of action on behalf of themselves and the other members of the Class.

39. As stated above, all Defendants made numerous false representations regarding the Fyre Festival.

40. Defendants represented, among other things, that (1) the Fyre Festival would take place on a private island; (2) the island was previously owned by infamous drug lord Pablo Escobar; (3) food and beverages would be provided, including VIP food packages and upgrades; (4) the living quarters would be fully furnished permanent structures; and (5) the event would be attended by celebrities, and that top-level musical talent would be performing.

41. All of the representations made by Defendants alleged in paragraph 40 proved to be completely false.

42. Defendants have, through various social media outlets, promoted this event vigorously. Based on Defendants knowledge concerning the lack of preparation of the event, Defendants had no reasonable grounds for believing the representations were true when they made it.

43. These representations by Defendants were clearly made to promote the event and increase the number of attendees to the event.

44. Based on the representations by Defendants, Plaintiffs purchased their tickets and attempted to attend the event.

45. Plaintiffs expended thousands of dollars on their ticket and travel accommodations to the event. Plaintiffs made further expenses on emergency travel and incidental expenses after the event was cancelled subsequent to their arrival at the event.

46. As a proximate result of Defendants' negligent misrepresentations, Plaintiffs and the Class have suffered an ascertainable injury and are entitled to relief, in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**(Breach of Contract)**

47. Plaintiffs repeat the allegations alleged herein as though fully set forth herein.

48. Plaintiffs bring this cause of action on behalf of themselves and the other members of the Class.

49. Plaintiffs entered into a contract with Defendants to provide a luxury music festival experience in exchange for money. Plaintiffs provided payment in consideration for Defendants' promise to provide a music festival.

50. Instead, Defendants breached the contract by providing substandard tents rather than the promised luxury villas, scarce food, no musical acts and ultimately a cancelled event.

51. Plaintiffs expended thousands of dollars on their ticket and travel accommodations to the event.

52. After Defendants failed to perform, Plaintiffs expended thousands of dollars on emergency travel plans and other incidental expenses to leave the event.

53. As a direct and proximate result of Defendant's breach of contract, Plaintiffs and the proposed Class have suffered monetary damages.

### THIRD CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

54. Plaintiffs repeat the allegations alleged herein as though fully set forth herein.

55. Plaintiffs bring this cause of action on behalf of themselves and the other members of the Class.

56. Plaintiffs entered into a contract with Defendants to provide a luxury music festival experience in exchange for money. Plaintiff provided payment in consideration for Defendants' promise to provide a music festival.

57. As alleged above, Defendant's failure to provide a music festival as promised constituted a breach of its duty of good faith with plaintiffs and the Class.

58. Plaintiffs expended thousands of dollars on their ticket and travel accommodations to the event.

59. After Defendants failed to perform, Plaintiffs expended thousands of dollars on emergency travel plans and other incidental expenses to leave the event.

60. As a direct and proximate result of Defendant's breach of its duty of good faith, Plaintiffs and the proposed Class have suffered monetary damages.

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment)

61. Plaintiffs repeat the allegations alleged herein as though fully set forth herein.

62. Plaintiffs bring this cause of action on behalf of themselves and the other members of the Class.

63. By their wrongful acts and omissions regarding the Fyre Festival, as discussed above, with materially misleading claims, Defendants were unjustly enriched at the expense of Plaintiffs and the other members of the Class, who did not receive the benefit for which they were promised and they were entitled – as discussed in detail above – for attendance to a multi-day music festival, and thus, Plaintiffs and the other members of the Class were unjustly deprived.

64. It would be inequitable and unconscionable for Defendants to retain the profit, benefit and other compensation it obtained from its deceptive, misleading, and unlawful conduct alleged herein.

65. Plaintiffs and the other members of the Class seek restitution from Defendants, and seek an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendants from its wrongful conduct.

## FIFTH CAUSE OF ACTION
### (Violation of N.Y. Gen Bus. Law § 349, *et seq.*)

66. Plaintiffs repeat the allegations alleged herein as though fully set forth herein.

67 Plaintiffs bring this cause of action on behalf of themselves and the other members of the New York Subclass.

68.     Plaintiffs and the members of the New York Subclass are individuals that paid for Fyre Festival tickets for personal purposes.

69.     Defendants had a statutory duty to refrain from unfair or deceptive acts or practices in the promotion of the Fyre Festival and sale of the Fyre Festival tickets.

70.     Defendants violated this duty by misrepresenting the characteristics, and qualities of the Fyre Festival as alleged herein.

71.     Plaintiffs and members of the New York Subclass were directly and proximately injured by Defendants' conduct and would not have paid for the Fyre Festival tickets had Defendants not engaged in their deceptive conduct.

72.     Defendants' deceptive representations and material omissions were, and are unfair and deceptive acts and practices.

73.     Defendants engaged in wrongful conduct while at the same time obtaining, under false pretenses, significant sums of money from Plaintiffs and the proposed Class members.

74.     As a proximate result of Defendants' misrepresentations and omissions, Plaintiffs and the proposed Class members have suffered an ascertainable loss and are entitled to relief, in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs requests on behalf of himself and other members of the Class, for judgment against Defendants as follows:

1.      An Order certifying the proposed Class herein under Federal Rule of Civil Procedure 23, and certifying Plaintiffs as class representatives and their undersigned counsel of record to represent the Class;

2. For actual and statutory damages for injuries suffered by Plaintiffs and the members of the proposed Class as a result of Defendants' conduct toward Plaintiffs and the members of the proposed Class;

3. Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

4. Awarding such other and further relief as this Court may deem just and proper including any extraordinary equitable relief as permitted by law or equity to attach, impound or otherwise restrict Defendants' assets to assure Plaintiffs and the members of the Class have an effective remedy.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

DATED: May 9, 2017                                    Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**

By: *s/ Lesley F. Portnoy*
Lesley F. Portnoy (LP-1941)
122 East 42nd Street, Suite 2920
New York, New York 10168
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
lportnoy@glancylaw.com

-and-

Robert V. Prongay
Marc L. Godino
Mark S. Greenstone
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: mgodino@glancylaw.com

*Attorneys for Plaintiffs*

360012.1